IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RUSSELL BRUMFIELD, JR.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 06-947-JPG |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Russell Brumfield seeks judicial review of the final agency decision finding that he is not disabled and denying him Disability Insurance Benefits (DIB) pursuant to **42 U.S.C. § 423**.

## Procedural History

Mr. Brumfield filed an application for DIB on July 29, 2002. He alleged that his disability began on August 29, 2001. (Tr. 98). He claimed disability due to a combination of conditions, including back pain, fibromyalgia, high blood pressure and sleep apnea. (Tr. 113).

The application was denied initially and on reconsideration. (Tr. 46, 47, 48-51, 53-56). At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Anne C. Pritchett on March 14, 2006. (Tr. 265-300).[1] ALJ Pritchett denied the application for benefits

---

[1] An earlier hearing was held and a decision rendered, but that decision was vacated because the recording of the hearing was lost. See, Tr. 86-88.

in a decision dated March 21, 2006. (Tr. 29-37). Plaintiff's request for review was denied by the Appeals Council, and the March 21, 2006, decision became the final agency decision. (Tr. 5).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in not considering whether plaintiff's depression meets or equals the requirements for Listing §12.04, Affective Disorders.

2. The ALJ should have given controlling weight to the treating doctors.

3. The hypothetical question posed to the Vocational Expert was flawed in that it did not include all limitations supported by the medical evidence in the record.

4. The ALJ erred in discounting plaintiff's credibility.

## The Evidentiary Record

The Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record. The review of the record will focus on the narrow issue raised by Mr. Lavine.

**1.    Plaintiff's Testimony**

Plaintiff was represented at the hearing by attorney Barry Olynnger. (Tr. 267).

Russell T. Brumfield was born in 1959 and was 45 years old at the time of the hearing. He was 5' 11" tall, and weighed about 200 pounds. (Tr. 270). He has a tenth grade education, and does not have a GED or any vocational training. He was in special education classes in school for slow learners. (Tr. 271).

He last worked in 2001. He has worked in the past in a bakery, as a security guard, and unloading and loading trucks in the automotive department at Dobbs Bargain City. (Tr. 273-275).

Mr. Brumfield testified that he is unable to work due to a number of problems. He has sleep apnea, such that some times he is more tired when he gets up than he was when he went to bed. He has low back pain. He also has depression. (Tr. 276-277).

His low back pain began when he hurt his back working at Dobbs Bargain City. (Tr. 277). The pain is constant, and is aggravated by activity. He testified that doctors had suggested "exploratory" surgery, but that they were afraid to do for fear of a lawsuit if "they mess my back up more." (Tr. 279). He takes medication, which only relieves 25% of his pain. (Tr. 280). He has also had physical therapy, which did not help. (Tr. 280).

His sleep apnea began eight or nine years ago. For the last three or four years, he has been using a CPAP machine and taking Trazodone, but they do not help. (Tr. 282). He only sleeps a couple of hours at night, and he sleeps during the day, for a total of about seven hours of sleep every 24 hours. He is tired during the day and cannot concentrate. He may just fall asleep sitting at the table. (Tr. 283).

Mr. Brumfield testified that he has "always been depressed," but it got worse after he hurt his back. He feels fatigued, shaky, and does not feel like doing anything. He has taken various medications. He is treated by a psychiatrist named Dr. Lee. He sometimes feels like hurting himself, but has not done so. Wellbutrin and Cymbalta help him somewhat. He does not like to interact with people. He has difficulty concentrating. (Tr. 283-287).

On a typical day, he may wake up early, or he may stay in bed until noon. He does not

get dressed five out of seven days a week. Four or five days a week, his back is really bad, such that he would be difficult for him to get in and out of the bathtub. He microwaves food for himself when his wife is at work. His wife does the household chores. Doing laundry bothers his back because of the lifting and bending. Vacuuming hurts his back because of the rotating. Riding the lawn mower hurts his back. (Tr. 287-289). He tries to walk a little to keep his back from being so stiff. He watches a little television, and reads the newspaper. (Tr. 289-290). He sometimes goes to the store with his wife, or to a restaurant. (Tr. 291).

Plaintiff testified that he can walk only half a block. He can stand for only 15 minutes, and can sit only for 15 minutes. He can lift five pounds. (292-293). Sometimes, if his back really hurts, he lays on the floor, but then has to have help getting up. (Tr. 293).

**2.     Testimony of Vocational Expert**

Darrell Taylor, Associate Professor at Southern Illinois University, testified as a vocational expert. Plaintiff stipulated to his qualifications. (Tr. 429). His c.v is at Tr. 60.

Taylor testified that plaintiff's previous work as a security guard was light, semi-skilled. His work in the bakery and loading and unloading trucks was heavy, semi-skilled. (Tr. 296).

The ALJ asked Taylor to assume a person who could often lift 20 pounds, occasionally lift 10 pounds, occasionally bend, crouch, twist, knee, and climb ramps and stairs. Taylor testified that there were light , unskilled jobs which the person could perform, such as hand packer and assembler, and that these jobs exist in significant numbers. (Tr. 297). If a sit/stand option is added, he would reduce the number of jobs by half. He also testified to a number of jobs at the sedentary level which plaintiff could perform. (Tr. 298).

Taylor also opined that, if he were to assume that Mr. Brumfield's testimony were

completely credible, he would be unemployable at any level. (Tr. 298).

**3.     Records of K. Michael Baker, M.D.**

Dr. Baker is an internist who practices with the Neuromuscular Orthopaedic Institute in Mr. Vernon, Illinois. Records from January, 2001, through January, 2003, are at Tr. 211-227.

In January, 2001, plaintiff was given an injection in the right SI joint, but did not get any relief. (Tr. 226). EMG and nerve conduction studies were normal, indicating that he did not have neuropathic sciatica. (Tr. 226).

On October 3, 2001, plaintiff complained of pain in the right side of his low back which increased with activity. He said he had been laid off from his job. He complained of sleep difficulties. On examination, the range of motion of the lumbar spine was "completely within normal limits." He was able to stand on heels and toes, and straight leg raising was negative. (Tr. 225). The physical findings were the same on October 31, 2001. (Tr. 222).

The next visit was on July 26, 2002. Dr. Baker noted that plaintiff "is here wanting me to back up his disability claim." (Tr. 221). Plaintiff told the doctor that he still had back pain and difficulty sleeping, and that he was able to stand for no more than an hour. Dr. Baker prescribed Amitriptyline and Darvocet for pain. (Tr. 221).

On October 4, 2002, Dr. Baker reviewed the results of a sleep study. Plaintiff continued to complain of back pain and difficulty staying awake in the day. He prescribed Vicodin for pain and Trazodone for sleep. (Tr. 220).

On Janaury 31, 2003, Dr. Baker wrote a letter in which he stated that plaintiff has fibromyalgia and a long history of back pain. He states that plaintiff has "problems with sleeping, fatigue, achiness, and back pain, all of which could impact his ability to work." (Tr.

211).

### 4. MRI, July 23, 2003

An MRI was done on July 23, 2003, at Missouri Baptist Medical Center in St. Louis, Missouri. It showed mild degenerative disc disease from L3-L4 through L5-S1, with mild degenerative facet changes. There was no lateralizing disc protrusion and no spinal stenosis. The changes were noted to be fairly stable from 1999. (Tr. 229).

### 5. David Raskas, M.D.

Dr. Raskas saw plaintiff on July 14, 2003. Plaintiff gave a history of low back pain since 1998. He stated that he gets intermittent leg pain, mostly on the right side, and that his back periodically locks up and "causes him to be shifted into a spasm." Examination showed that his strength and reflexes were normal, and straight leg raising was negative. He had limitation of his lower extremity range of motion. (Tr. 230-232).

On July 23, 2003, Dr. Raskas reviewed the results of the MRI. He concluded that plaintiff has a degenerative spondylotic condition which he would expect to produce "episodic back pain that keeps him from being able to perform activities of daily living at times." He characterized that as "a condition that he can likely live with" and did not recommend any treatment other than anti-inflammatory medication and physical fitness. (Tr. 228).

### 6. Consultative exam

Raymond Leung, M.D., performed an examination on September 24, 2002.

Plaintiff told Dr. Leung that he has low back pain and upper leg pain, which he stated was constant, high in intensity, and not helped with pain medication. He also stated the CPAP treatment does not help his sleep apnea. He claimed difficulty with bending, squatting, and

prolonged sitting or standing. Plaintiff said he could walk one-half block, climb one-half of a flight of stairs at a time, and lift five pounds. He also claimed difficulty with grip strength in the right hand. On exam, he was able to heel and toe walk and squat. He could forward flex to 90 degrees without vertebral tenderness, and he had no paralumbar spasms. He had good grip strength. He was "mildly tender to palpation" in both upper legs and the lower right leg. His gait was normal. He got on and off the examining table with no problems. (Tr. 200-203).

**7.**     **State agency physician physical assessment**

State agency physician Clement Gotway, M.D., completed a functional capacity assessment on October 10, 2002. (Tr. 170-177). He concluded that plaintiff was capable of performing light work in that he could frequently lift 10 pounds, occasionally lift 20 pounds, stand or walk for 6 out of 8 hours, sit with normal breaks for 6 out of 8 hours, and had no push/pull limitations. He noted no manipulative limitations, and only postural limitations of only occasional climbing, stooping, kneeling, crouching, and crawling, and never climbing ropes or scaffolds.

The assessment was reviewed and affirmed by a second state agency consulting physician. ( Tr. 177).

**8.**     **Psychological Exam, Harry J. Deppe, Ph.D**

Dr. Deppe performed a psychological exam on September 24, 2002. He noted that plaintiff had received no treatment from a psychiatrist or psychologist, but was taking Elavil prescribed by his family doctor. Dr. Deppe administered testing which showed that plaintiff's IQ is in the average range. He was somewhat stronger in distinguishing relevant from irrelevant details, and somewhat weaker in short term memory skills. His abilities to relate to others, to

understand and follow simple instructions, and to maintain attention required to do simple, repetitive work were intact. His ability to withstand stress and pressure associated with day-to-day work was fair. His social functioning and ability to care for personal needs was intact and he had only mild change in his interests and in his restrictions of daily activities as a result of his impairment. (Tr. 207-210).

**9.     State agency consultant mental RFC**

State agency consultants performed a mental RFC assessment on November 6, 2002. He was evaluated under Listing 12.04, affective disorders, and was noted to have depression. (Tr. 157). With regard to the "B" criteria, he was noted to have mild restriction of activities of daily living, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. He had no episodes of decompensation. (Tr. 164). He had no "C" criteria. (Tr. 165).

Plaintiff was found to have moderate limitation in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods. He also had moderate limitation in his ability to work in proximity to others without being distracted. He had no other limitations in areas of concentration and persistence. He had no limitations in the area of understanding and memory. In the area of social interaction, he had moderate limitation in ability to interact with the general public, and in the ability to get along with coworkers. He had no limitations in the area of adaptation. The conclusion was that Mr. Brumfield has the ability to perform and sustain simple tasks which have few social demands. (Tr. 167-169).

**10.    Elbert Lee, M.D., Psychiatrist**

The record contains Dr. Lee's office notes from June 25, 2003, to January 16, 2004.

Plaintiff was seen eight times. Dr. Lee notes that his mood was depressed, but that he had no suicidal ideation, no hallucinations, and no delusions. (Tr. 238). He initially prescribed Adderall and Lexapro, but then changed the Adderall to Ritalin on July, 2003. (Tr. 237). Ritalin caused insomnia, so he was changed to Dexedrine. (Tr. 236). As of the last visit, Dr. Lee noted that plaintiff was still depressed and still had difficulty concentrating. He also noted mood swings. He was "sleeping fair." (Tr. 234).

Dr. Lee wrote a letter on November 20, 2003, in which he stated that plaintiff had major depression and was disabled. He also stated he was unaware of any physical limitations. (Tr. 239). He wrote a second letter on February 9, 2005, in which he stated that plaintiff has "struggled immensely with depression" and that his depression was very difficult to control. He stated that plaintiff's depression is "of a very severe variety that does not respond readily to treatment." and that he is totally disabled and unable to work. (Tr. 240).

Dr. Lee completed a questionnaire which indicated that his opinions were based on "clinical interviews." He did not identify any testing that he had done. (Tr 242).

## **Applicable Standards**

To qualify for disability insurance benefits, a claimant must be "disabled." "Disabled" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C.**

**§§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** *Bowen v. Yuckert*, **482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** *Knight v. Chater*, **55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether Plaintiff is, in fact, disabled, but whether ALJ Pritchett's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** *Books v. Chater*, **91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, **402**

U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** In analyzing the ALJ's decision for "fatal gaps or contradictions," the Court "give[s] the opinion a commonsensical reading rather than nitpicking at it. ***Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)**.

## Analysis

The ALJ properly followed the five-step inquiry. She found that plaintiff has severe impairments, but that his impairments do not meet or exceed a listed impairment. She found that plaintiff has the residual functional capacity to perform a significant range of work at the light exertional level, and that there are a significant number of jobs available that he could do. (Tr. 29-36).

Plaintiff first challenges the ALJ's finding at step 3. He argues that he is per se disabled due to depression under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04, Affective Disorders.

The portion of the listing that is relevant to depression is as follows:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:
1. Depressive syndrome characterized by at least four of the following:
    a. Anhedonia or pervasive loss of interest in almost all activities; or

-11-

    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucinations, delusions or paranoid thinking; ....

 And

 B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;
Or

 C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

  The ALJ concluded that plaintiff has depression, and that it is "severe impairment." (Tr. 31). However, she also concluded that none of plaintiff's impairments, singly or in combination, meet or equal the requirements of any listing.

  The ALJ referred only to Listing 12.02, which is the listing for organic mental disorders. Plaintiff first complains that the ALJ did not refer specifically to Listing 12.04. It is possible

that the reference to 12.02 instead of 12.04 was a typographical error. Even if it was not, the failure to cite the specific Listing does not require remand if the ALJ has adequately discussed the evidence in relation to the correct Listing. **Rice v. Barnhart, 384 F.3d 363, 369-370 (7th Cir. 2004).**

Here, the ALJ explained the rationale for her conclusion that plaintiff did not meet the listing for affective disorders. It is clear that she was considering whether plaintiff met the listing for depression, as she referred repeatedly to his claim that he suffered from depression and, in fact, found that he does suffer from depression. (Tr. 31, 32, 33, 34). She stated that he has mild impairments of activities of daily living and social functioning, and that he has moderate limitation of concentration, persistence and pace. (Tr. 32). These are the categories of the "B" criteria of Listing 12.04. In order to be found presumptively disabled under Listing 12.04, two of the B criteria must be present, and the B criteria require findings of "marked" restrictions or difficulties in these areas. The ALJ's findings that plaintiff has only "mild" or "moderate" restrictions is a finding that he does not meet the B criteria. The state agency consultants, upon whom she relied in part, evaluated plaintiff under Listing 12.04. See, Tr. 157. It is clear from the discussion that the ALJ was considering the correct listing, that is, Listing 12.04.

Plaintiff relies solely on the findings of Dr. Lee for his argument that he did, in fact, meet the B criteria. See, Doc. 10, p. 13. Plaintiff's real argument here is that the ALJ accepted the findings of Dr. Deppe and of the state agency consultants who did the mental RFC assessment, and discounted the findings of Dr. Lee.

Plaintiff argues that the ALJ erred in not giving controlling weight to the opinions of both

his treating doctors, Dr. Baker as to his physical condition, and Dr. Lee as to his mental condition.

The ALJ gave her reasons for discounting the opinion of Dr. Lee. She pointed out that Dr. Lee's office notes are sparse, and do not contain any objective findings of concentration limitations, such as serial seven testing or memory testing. Further, Dr. Lee did not see plaintiff until June of 2003, and Dr. Deppe's exam did not show any mental impairment in 2002. (Tr. 34). Indeed, Dr. Lee indicated that his opinions were based on "clinical interviews," and he did not identify any testing which supported his diagnosis. (Tr 242). The ALJ noted that there were no objective findings in Dr. Lee's notes to support the "severe limitations" that the doctor listed in his medical source statement. (Tr. 35). This is a permissible basis on which to weigh the medical evidence. "Medical evidence must be sufficiently complete and detailed as to symptoms, signs, and laboratory findings to permit an independent determination." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00.D.

As for Dr. Baker, the ALJ explained that the medical source statement signed by Dr. Baker "clearly was not filled out by Dr. Baker." She noted that the form did not list any objective findings of limitation on exam, did not give any objective basis for the limitations listed, and appeared to be completely based on the claimant's "self-reported limitations." (Tr. 35). She also noted that Dr. Baker's records show a normal range of motion on most visits, ability to heel and toe walk, and negative nerve conduction studies. These objective findings were consistent with the findings of Dr. Leung. (Tr. 33). Further, the ALJ noted that "The minimal findings on imaging studies, the claimant's virtually intact abilities on examination, full range of motion, full strength and sensation, ability to walk on heels and toes, and the description

[by Dr. Raskas] of his pain as episodic or intermittent, are all inconsistent with his allegations at the hearing, and are inconsistent with his alleged limitations." (Tr. 33). The ALJ was justified in concluding that Dr. Baker's objective findings did not support the limitations set forth in his medical source statement.

A treating physician's opinion is, of course, not automatically entitled to controlling weight. Such an opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. ***Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

The determination of whether a claimant is "disabled" is to be made by the Commissioner, and not by the treating physician; a claimant is not entitled to benefits simply because his doctor has said he is unable to work. ***Dixon v. Massanari*, 270 F.3d 1171 (7th Cir. 2001).**

With regard to the assessment of treating source opinions, **20 C.F.R. §404.1527(d)(2)** states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u>

[emphasis added]

The ALJ's decision must be based on testimony and medical evidence in the record, and not on his own "independent medical findings." ***Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).** However, this does not translate into a rule that the ALJ must always accept the treating

source's opinion as to residual functional capacity. This not a case where the ALJ substituted her own medical judgment instead of basing her decision on the medical evidence in the record. Rather, the ALJ relied upon the opinions of the state agency physicians, which she is required to do under the regulations discussed above.

The ALJ correctly applied this standard in evaluating the opinions of Drs. Lee and Baker. As is detailed above, she articulated findings in the medical record which do not support a finding of total disability. (Tr. 33-35). In fact, the only positive objective findings cited by plaintiff are tenderness in the low back, trigger points, and one instance of limited range of motion of the lower extremity noted by Dr. Raskas. **Doc. 10, p.15**.

The ALJ accepted the findings of the state agency consulting physicians because they were consistent with the other medical evidence. (Tr. 35). Her analysis was proper. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f)(2)(i).

Plaintiff's argument is really nothing more than a complaint that the ALJ did not weigh the medical opinions in the way that plaintiff would prefer. That does not present grounds for reversal. This court does not reweigh evidence or decide credibility. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** In view of the lack of objective positive findings, and the fact that most of Dr. Baker's findings on examination were essentially normal, this court finds that the ALJ's weighing of the medical assessments was supported by substantial evidence in the record and was not contrary to law.

Plaintiff's third point is that the hypothetical posed to the vocational expert did not

source's opinion as to residual functional capacity. This not a case where the ALJ substituted her own medical judgment instead of basing her decision on the medical evidence in the record. Rather, the ALJ relied upon the opinions of the state agency physicians, which she is required to do under the regulations discussed above.

The ALJ correctly applied this standard in evaluating the opinions of Drs. Lee and Baker. As is detailed above, she articulated findings in the medical record which do not support a finding of total disability. (Tr. 33-35). In fact, the only positive objective findings cited by plaintiff are tenderness in the low back, trigger points, and one instance of limited range of motion of the lower extremity noted by Dr. Raskas. **Doc. 10, p.15**.

The ALJ accepted the findings of the state agency consulting physicians because they were consistent with the other medical evidence. (Tr. 35). Her analysis was proper. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f)(2)(i).

Plaintiff's argument is really nothing more than a complaint that the ALJ did not weigh the medical opinions in the way that plaintiff would prefer. That does not present grounds for reversal. This court does not reweigh evidence or decide credibility. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** In view of the lack of objective positive findings, and the fact that most of Dr. Baker's findings on examination were essentially normal, this court finds that the ALJ's weighing of the medical assessments was supported by substantial evidence in the record and was not contrary to law.

Plaintiff's third point is that the hypothetical posed to the vocational expert did not

source's opinion as to residual functional capacity. This not a case where the ALJ substituted her own medical judgment instead of basing her decision on the medical evidence in the record. Rather, the ALJ relied upon the opinions of the state agency physicians, which she is required to do under the regulations discussed above.

The ALJ correctly applied this standard in evaluating the opinions of Drs. Lee and Baker. As is detailed above, she articulated findings in the medical record which do not support a finding of total disability. (Tr. 33-35). In fact, the only positive objective findings cited by plaintiff are tenderness in the low back, trigger points, and one instance of limited range of motion of the lower extremity noted by Dr. Raskas. **Doc. 10, p.15**.

The ALJ accepted the findings of the state agency consulting physicians because they were consistent with the other medical evidence. (Tr. 35). Her analysis was proper. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f)(2)(i).

Plaintiff's argument is really nothing more than a complaint that the ALJ did not weigh the medical opinions in the way that plaintiff would prefer. That does not present grounds for reversal. This court does not reweigh evidence or decide credibility. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** In view of the lack of objective positive findings, and the fact that most of Dr. Baker's findings on examination were essentially normal, this court finds that the ALJ's weighing of the medical assessments was supported by substantial evidence in the record and was not contrary to law.

Plaintiff's third point is that the hypothetical posed to the vocational expert did not

include all of the limitations alleged by plaintiff. That is not a valid argument. It is well established that "the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." **Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007), citing *Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 540 (7th Cir.1992).**

The ALJ was not required to include limitations that she found were not supported by the record. Plaintiff's argument about the hypothetical is a rehashing of his argument about the weight to be given to the respective medical opinions. For the reasons discussed above, the ALJ did not err in weighing the medical evidence. She was not obliged to include in her hypothetical any impairment which she did not find credible.

Lastly, plaintiff takes issue with the ALJ's finding that his testimony was not entirely credible.

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. ***Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).** The credibility findings should not be disturbed unless they are "patently wrong." **See *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)**. The ALJ is not patently wrong here.

The ALJ noted that Mr. Brumfield's claim of severe back pain was contradicted by the limited objective findings. (Tr. 33). While a claimant's subjective complaints cannot be disregarded "simply because they are not fully supported by objective medical evidence....a discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration." ***Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005).** Here, the ALJ properly found such discrepancies. For instance, plaintiff testified that his

back pain was constant, but told his doctors that it was intermittent. (Tr. 34). Plaintiff testified that the CPAP treatment did not help his sleep apnea, but the "titration study suggests otherwise." (Tr. 34). Plaintiff testified that surgery had been recommended for his back, but there was no such indication in any of the medical records. (Tr. 34).

The ALJ noted that, despite his claim of constant, debilitating back pain, he took only Naproxen for pain, and did not report any additional measures other than rest to relieve his symptoms. (Tr. 34). Lastly, the ALJ noted that Mr. Brumfield did not have any difficulty concentrating during the hearing, and that he had a "poor and uneven work history." (Tr. 35).

"Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying. Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ...can the finding be reversed." **Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006)**.

Here, the ALJ did not base her credibility determination on a factor that is unreasonable or unsupported. Rather, she considered the factors identified in SSR-96-7p; that is, she considered "the entire case record, " she compared plaintiff's testimony to his statements made under other circumstances, and she considered the objective medical evidence, daily activities, and kinds of treatment, including medication. Her credibility findings were not patently wrong, and must be accepted.

## Recommendation

For the aforesaid reasons, it is the recommendation of this Court that the final decision of the Commissioner of Social Security finding that Plaintiff Russell Brumfield, Jr., is not disabled, and therefore not entitled to Disability Insurance Benefits, be **AFFIRMED.**

Objections to this Report and Recommendation must be filed on or before **March 3, 2008.**

**Submitted: February 14, 2008.**

        **s/ Clifford J. Proud**
        **CLIFFORD J. PROUD**
        **U. S. MAGISTRATE JUDGE**